I have a vague recollection that we got some sort of a motion to consolidate the argument, but maybe I'm confusing it with the other case. It seems to the panel, having gone through the briefing now and had an opportunity, that it would make more sense to just sort of consolidate the purposes of argument. And we realize there might be some distinctions between the cases and you're free and we'd like you to highlight that and tell us which case you're talking about. But it seems to me it makes more sense than having you pop up and down for different cases given the overlapping issues. So are we all amenable to that? Yes. All right. And we'll give 20 minutes to a side if that's necessary. I'm sorry, how much is the time? 20 minutes. Okay. But if we have questions, you're not going to be cheated out of time you would otherwise have if that is worthwhile spent. So please proceed. Thank you. We make a virus that helps cells to express interferon and interferon helps the human body to combat cancers. We gave this virus to some professors at the University of Pennsylvania. They're brilliant scientists, very good clinicians. I'm sorry. I'm sorry. We gave our virus to some professors at the University of Pennsylvania Medical School. They're brilliant guys, very creative. They're not really good at sort of administrative paperwork. When we gave the virus to them, they promised that they would, before publishing, that they would tell us before publishing so we could file patents on it. They go and do their work and we meet them later on and we ask them how their work is going and they say, great news. We got an article published in the Journal of Thoracic Surgery. And as a patent attorney, of course, my heart was broken because I knew that all of our patent rights outside the United States were irrevocably destroyed. I looked at the article, however, and I see that the article was published. What had happened apparently is the professors got the results, wrote a draft manuscript, sent it into the journal. The journal looked at it for a couple of weeks, said, hey, this is actually, it's newsworthy. We want to run this story. So they accepted it for publication. Then the journal sent the manuscript out for peer review, which is normal for scientific publications. It goes through peer review for a couple months and then is published, everybody agrees, in the hard copy in the December issue. Now the dispute here is when we look at the patent office, the examiner noted that on the first page of the article it says, in the bottom of the left-hand column, it says published in press in June. If this article was published in press in June, it does qualify as prior art under 102B. So the examiner and I both make a mad rush to try and find that June manuscript. The examiner looked on National Library of Medicine, as did I. Neither of us could find it there. The examiner and I both looked on Google Scholar. The examiner and I both looked on the publisher's website and couldn't find it there. I called up the publisher to say, hey, I need a copy of this June manuscript to see if it in fact teaches everything that my patent covers. They don't have a record of that manuscript. And the examiner, I don't know if he called the publisher himself, but he's a very thorough guy, and I wouldn't be surprised if he said that, yes, he did the same thing that I did. Anyway, we have a December publication that says that something was published in June, but nobody can find the June thing. And so my suspicion is that all that was published in June was not the full manuscript. It was merely the abstract, which is typical in, or it used to be typical in scientific publishing. You'd publish the abstract to sort of build reader interest in a significant upcoming article, but you wouldn't. Did the publisher, when you contacted the publisher, say that the article was not published in June? They said they had no record of that June manuscript, the publication of it. They didn't say that the notation was incorrect. They just didn't have a record of it. She didn't have a copy of it, and she didn't have either a copy of the publication guidelines from seven years ago. Today, if we look on the publisher's website, the publisher's guidelines say you send in a manuscript, and they immediately put it on their website within 24 hours. But she said that she didn't even have the copy of what the standard business practice was seven years ago. So we don't know. She didn't say it was not published. She didn't say, well, she said she didn't have a copy of it. Well, that's a different question, though. That's a different question, yes. So I'm trying to, you know, this is a factual question, right? Yes. The board made certain findings, so it's a matter of our looking at the findings and what was on each side of the ledger. Yes. Including whether there's enough to establish clear error in terms of what the board found. So let's talk a little about the evidence. You've got Sturnum making a statement, right? He was saying this was available. No? The publisher said that they published in press at a certain website, and on the website there's only the December, or it's actually a November PDF file, not a June file. I thought Sturman made some statement about the online publication was available before the critical bank. This is in appendix 32 at the bottom. I'm sorry, which? That's the published article. I've kept the same number in both cases. Sorry, give it to me again. So it's appendix 32 in the bottom. It says published in press, but this is actually not Sturman. Sturman, he's a surgeon at the University of Pennsylvania. So this is the Journal of Thoracic Medicine is saying. This is the publisher actually saying this. And the frustrating thing about that is the article says published in press, but no one can actually find that alleged publication. And you would think that with an article this significant, with a journal this prestigious, that somebody somewhere would have cataloged it, even if it was just a rough manuscript. Well, okay, so what do you think the rules are? I mean, the federal rules of evidence don't apply. You've got this in a printed thing, and it says this was available and published on a certain date. Yes. Do you agree the burden would shift to you to establish that it wasn't? Is it sufficient to make a prima facie case that it was published? The assumption is there's nothing to suggest that we would not believe what we read in this publication. It's trustworthy and reliable, if it appears. That's the assumption we can all start with. So what do you give us to undermine that, other than there's nothing more behind this to prove that it happened? Because the Administrative Procedure Act requires any federal agency, not merely the Patent Office, any federal agency, cannot take action unless they have substantial evidence to support that action. And here, nobody anywhere has evidence of that manuscript that was allegedly published. And the fact that I can't find it and the examiner can't find it regardless of what the December article says, the inability of anybody to find the alleged June manuscript tells me that it doesn't exist. But I think the critical question is, the examiner is relying on the article itself, the published article that appears in your appendix at 32. The examiner's position is that that article says, on its face, that it was originally published on June 3, 2011. So the Patent Office is basically saying that's the prima facie case that's necessary to establish that reference as a 102B piece of prior art. Then, it would seem to me, the burden shifts to you to disprove that date. And it seems to me you've fallen short on disproving that date. You haven't rebutted the prima facie case because you haven't established that on June 2011, this article was not published. Two things. Second, it's impossible to prove a negative. I can't give you an article that wasn't published. If the publisher had said, I don't care what that notice says, we never published anything on that date, that would have done it. First, the Patent Office, the Board of Appeals, said we were actually talking about two different documents. We were talking about a December publication and a June manuscript. I don't think that's what the Patent Office is arguing. The Patent Office is saying there's only one piece of prior art in question here. The only issue is what the date is. And the piece of prior art on its face has a June 11 date and that's what the Patent Office is relying on. The Board of Patent Appeals, this is Appendix 6 in the Second Appeal, 18-1088, talks about we appear to have confused the PDF available today, which is the June document. Can you tell us when the transcript is? Yes, this is Appendix 6. This is the Second Appeal, 18-1088, Appendix 6. Was there any evidence showing the changes that were made from the initial placing that on? No, there's none. That's my frustration because I'd love to be able to give you a copy of the manuscript published in June, or allegedly published in June, and say, here's what was added during peer review, here's what was changed during peer review, and so the June manuscript doesn't anticipate because of these changes. I can't do that because no one has, that manuscript is unavailable to anybody. So I can't tell you how the manuscript was changed during peer review. This is difficult. If, in fact, there were standard routine editing, if there was public notice that this information is out, it was, then it disappears and can't be retrieved. What's retrieved is something else, which may or may not be substantially identical. Exactly. But more likely than not, it looks as if it's the same article edited a little bit. I would hesitate to jump to that conclusion only because it took six months for peer review to be complete. The article was accepted in the end of May, I believe, and it didn't actually get put into PDF format to be typeset until Thanksgiving Day in November of 2000. Yeah, but didn't, I mean, but if you look at the record, and I'm not sure whether this is the examiner or the board itself, but they refer to the fact that, I guess, Sternum says it was accepted in final form on May 30th, 2011. You're not disputing that. And then there's these manuscript guidelines that no one is also disputing, that the guideline, Manuscripts Accepted for Publisher Guidelines state Manuscripts Accepted for Publication will immediately, within 48 hours of acceptance, be published online. So it seems that this was following regular order. So you've got this other bit of information. It's not just the statement that he submitted on a day, but it seems like routine practice means it is going to be available online. Those guidelines are from today's, they're today's guidelines. They're not the guidelines from seven years ago. We don't have any evidence of what the guidelines were seven years ago. They're not archived. I can't get them from saved copies of the publisher's website. The publisher doesn't have them. I called the publisher and the girl I talked to doesn't have them. So we don't know what their guidelines were seven years ago. What I can say is publishing today is a different animal than it was seven years ago. The news today travels much faster. And in the scientific community, there is a much greater urgency to publish even imperfect results fast as compared to seven years ago when before the Internet was as pervasive as it is now. Seven years ago, the scientific publication had a more modulated mechanism for getting the peer review done and getting it done right before the article is released. Well, that might be very persuasive if not for the fact that the article itself refers to its publication on June 3, 2011. So we're working backwards from that to see what kind of makes that make sense. But I appreciate your comment. Anything else? Any other questions? Thank you. We'll save some rebuttal for you. Thank you. May it please the court. The question in both cases is whether Sturman was publicly accessible more than one year prior to the critical date. As the court has already acknowledged, Sturman on its face establishes that it was published in press, i.e. online, on June 3, 2011. But, you know, there were a lot of things published and printed. So why, in order to establish what Judge Lindbergh proved was kind of a prima facie case, why isn't it probative that it wasn't available when they searched it? Nobody can find it. Yes, Your Honor. I mean, I think that that reflects a practical reality of patent examination, which is that they are looking at something after the fact. The examiner found the reference, and I want to be clear for one second here about the distinction between the two cases. So we have two appeals. 2244 involves the 399 application. Is that the parent? That is actually the child. The child was examined more quickly than the parent because the child was on track one. But that's the first case that came on appeal. And in that case, the only evidence in the administrative record is the article itself. There is no other evidence. The applicants in that application did not put in any other evidence. So I just want to be clear about what the evidentiary record is. And so in that case, we have the prima facie case established by the article. The article says it was published in press. The full text article says it was published in press on June 3rd. And the article also reflects that there was a peer review time because it was accepted in manuscript form on March 28th and accepted in final form on May 30th. There's some additional evidence that the appellants put in in the 1088 appeal and the 202 application. And the examiner then addressed that additional evidence. There was some evidence about the particular PDF that's available at the DOI, at the website that links to the DOI. And the examiner then found the publisher's guidelines, which are entirely consistent with the information that is printed on Sturman. So although we don't have the 2011 guidelines, we do have information on Sturman that's consistent with the process that's reflected today. And I did want to make one additional point, which is that my friend mentioned a fair amount of facts here that aren't in the record and alluded to the fact that no one was able to find the Sturman reference in prior form. But it also sounded like, from what he was discussing, that they are in touch with Sturman. And there was no reference to reaching out to Sturman for that manuscript form. And I want to be clear that that is not the examiner's burden. The examiner made the prima facie case here, but I just wanted to make that point of clarification. It's unclear what exactly they weren't able to find. Well, there's a statement from Sturman in the record now, or is that just what's in the publication? I believe that's just in the publication, yes. And unless the Court has any further questions. Well, the only troubling question, how can something be a printed publication if it's disappeared? No one can retrieve it. It's gone. Perhaps we'll assume it could have been retrieved. In those first six months, we don't know. We don't have a printed copy. The office didn't produce a printed copy. Neither did anyone else. Changes may or may not have been made. But it's gone. The idea, the whole principle of publications of prior art is that this is what the public, the interested public, the concerned public refers to, can rely on, can find, and it's gone. Yes, Your Honor, I would say that it's not gone. We have the printed publication here. And we also have a reliable statement that it was available. So there's two questions. What is the printed publication and when was it publicly accessible? Someone said this is available. They said this was put on the Internet. But it's gone. You can't find it. You might have been able to find it earlier. We don't know. You can't find it now. It's disappeared. Well, I think that unless there was evidence that's established that there was some type of material change, and there isn't in this case, and, in fact, all the evidence establishes that at most there might have been copying, you know, copy editing types of changes. If the information was available in a printed publication. The publisher says I put this online. No evidence. No proof. No nothing. Nobody said that they found it or saw it or read it or relied on it. And if you go online and follow that instruction, which was printed by the publisher, you get something with a different date. Well, you get the PDF, the final form, had a different date. We're not disputing that. But the printed publication itself also reflects that it has a publication date of June 3rd. And this is very similar to the Epstein case in which this court found that abstracts, which themselves were not identified as prior art, that reflected dates of availability for on sale or public availability, that that was reliable evidence. This wasn't printed. I mean, if you use the word printed as one ordinarily reads it, it wasn't printed. It's on the cloud someplace. Well, it was a PDF. It was a printed document. It was available in written form. I don't think that there's a dispute here that this was a printed publication. But you have to show it. You have to find it somewhere. The theory of prior art is that this is information that the public relies on, but it's disappeared. Well, again, Your Honor, I would maintain that it hasn't disappeared. And I would also point to the publisher's guidelines that say that when articles are published in press, they are available on the website in full, and that they are searchable, that they're accessible, so that someone who is interested in this subject matter would be able to find the article. I don't know what the content is. If you can't find it. I mean, now we have an important discussion, a debate of validity and a lot of other things. So the question is, what is the prior art? And it isn't there. We don't know what's in that publication. Well, again, Your Honor, I would say that we do because we have the full press article today. And I also analogize this to editions of books, right? There may be slight changes in books, editions, but it would certainly be proper to rely on the reference to an earlier edition in the book to say that the information in a printed publication was available. It's not printed. I mean, it's digital. No point in saying it's a printed publication because we don't have it. It was never printed. It was placed on the Internet. Well, I don't understand that there to be a dispute about the definition of printed here, that an Internet source couldn't qualify as something that was printed because that is not an argument that appellants have raised. The complication really arises in what should the rule be in these days of immediate communication via the cloud. Certainly, it is not technically printed. Well, and I think, again, the question here is, is there prior art that was available one year prior to the critical date that disclosed all of the claims here? And there's no dispute as to Sterman disclosing all of the elements of the claims. And so the question is just, was it publicly accessible more than one year prior to the critical date? And the government, excuse me, the director maintains that the office made out the prima facie case and when additional evidence was introduced that the board found as a factual matter that the evidence as a whole showed that this printed publication was available more than one year prior to the critical date. Is there any dispute over whether the statement originally published in press, etc., etc., June 3rd, 2011, that appears at the bottom of Appendix 32, is there any dispute over whether that statement was made by the publishing company or simply by the author as part of the manuscript? I don't understand there to be a dispute. I understand that to be by the publisher, but I don't understand there to be a dispute. And I believe my friend said that as well. Would it make a difference? I don't know that it would make a difference. It's not something that I've considered, and there's no question here. I don't even think there's a question about reliability. I think there's a question maybe perhaps. It seems it might make a difference. If the publisher is putting the date on it, then it has sort of all of the normal attributes of verifying the date, as opposed to a statement that's contained in the abstract by the author. I see your point. And I understand this to be made by the publisher, and I would also point out that the – It would be unusual if it was otherwise. That's right. And the digital object identifier, which is in that same statement, is something that has to be updated by the publisher. So that's something that I understand the publisher. So it wouldn't make sense for the author to put that in there? That's right, Your Honor. One of the problems, still worrying about this, the scientific article is, by standard rules, a reference on the date that it's published. But all that happens in between the peer review, the circulation, the amendments, and so on, are not prior art as far as the rest of the world is concerned. Now, here we have a publisher who, in public scientific interests, undoubtedly, when an article is submitted to that journal, puts it on the Internet. It may never achieve scientific publication in the routine, formal manner. So why is this different from whatever other internal circulation? I'm thinking particularly of peer review, where a lot of people may see the content of the scientific article. Why is this different when today's technology allows a broader audience to the subject matter that's just being considered for publication? So this was not, the Jinthar date was not the date at which it was being considered for publication. That was the prior March 28th date. The manuscript was submitted on March 28th. It went through the peer review process then and was accepted in final form on May 30th. So at the point in which it was published in press for the world to see, it had gone through the peer review process at that point and was then going to be part of a later journal, a hard copy journal. But it was, it had gone through the peer review process. And it's both, the guidelines established at that point, the publication is both citable and searchable. So that's the relevant reference for the Jinthar date. I would agree if that's what happened. But that isn't what happened. You can't find it. It's gone. It can't be retrieved. It was changed. We don't know how much was changed. We don't know what was changed. But it's not there anymore. If all that happened was that it was placed on the Internet and there it sits, you could find it, could reasonably find it. Okay, but that isn't what happened. And that's what's curious about this case. Well, again, part of the reason that it has the document object identifier is to allow people to reference it with a particular way. So we don't have any evidence showing that there were any material changes made. And we do have the article showing the publication date of June 3rd. And we have the publisher's guidelines that established that as of June 3rd it was both citable and searchable. But that's what this is all about, isn't it? The article has a later date. Well, the article has the June 3rd date on it. We don't know what the initial submission was. We don't know what was on the Internet and withdrawn. The office doesn't know. Apparently it's not on the record. We have no evidence showing that it was any different, though, either. And that's really the critical point here is that the office, with its limited resources, found an article, a prior publication article, with a reliable June 3rd publication date. And that's the date on which the office relied. Thank you. I'd like to just clear up one nit. Opposing counsel is a brilliant attorney and has done a wonderful job on this. But she said that the article was submitted on the 28th of May and went through peer review. And the peer review was completed 48 hours later and the article was accepted for publication. That's actually not correct. What happened is the article was submitted within 48 hours. The journal accepted it, recognized it as being newsworthy. But that's when the article is then sent out around the country and perhaps around the world to different professors that are in the same field so the professors can look at the data and see whether the method is correct and if the data supports the conclusions. That peer review process takes several months. And in terms of what is added or subtracted during that, we can infer that something had changed because there was a six-month delay between the time that the journal said, hey, this is hot news, let's run the paper. Six-month delay between that and the time that the journal article actually came out. And then two months after the journal article came out, there was an appendix published, which is also in, coincidentally is in our evidence, appendix page 51. We see the article and then we also see a little tab in the middle of appendix 51 where they're talking about supplemental content. And just for curiosity, I looked in that supplemental content and that supplemental content is another probably 50% more experimental data that these guys had come up with. And that was all put in within two months of the December publication. So that we see that these guys were actually working very fast, building a lot of data. And if they added a bunch of data within two months after December, my intuition is something must have been added in the six months before December. You mentioned in your opening argument that you reached out to the publishing company. Yes. Did you make any effort to reach out to Mr. Sterman? I had dinner with him and I said... Did he clarify any of this? I said, Dan, do you have a copy of that manuscript published on the website? And he said no. Well, aside from whether he had a copy, was there any discussion about whether it was or was not published on the date that it says it was published? I don't remember asking him whether... That would have been a good question to ask. Thank you very much. Thank you for your time.